# UNITED STATES DISTRICT COURT
for the
District of Delaware **REDACTED**

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Silver IPhone IMEI # 355792073942131, described more particularly on Attachment A

Case No. 19- 156M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

silver IPhone IMEI # 355792073942131, described more particularly on Attachment A

located in the _____ District of _____Delaware_____, there is now concealed *(identify the person or describe the property to be seized):*
see Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1), (b)(1)(C) | Distribution of and possession with intent to distribute heroin |

The application is based on these facts:
see attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Talansky Jean, TFO, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/16/2019

_____
*Judge's signature*

City and state: Wilmington, DE

Hon. Mary Pat Thynge, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SILVER IPHONE IMEI# 355792073942131, FCC ID; BCG-E2816A, MODEL: A1549 (USING CELLULAR PHONE NUMBER 443-591-8265) CURRENTLY LOCATED AT 1012 W. STATE COLLEGE ROAD, DOVER, DELAWARE | 19-156M<br><br>Case No. 19-77M |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Talansky Jean, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), United States Department of Justice. I am currently assigned to the DEA Philadelphia Division, Dover Post of Duty ("DPOD"). I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), empowered to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. During my law enforcement tenure, I have participated in numerous investigations into the unlawful distribution of narcotics in violation of federal and state laws that

have led to arrests, convictions, and seizures of narcotics and proceeds gained from illegal activity. In the course of my duties, I have conducted or participated in physical and electronic surveillance, the execution of search warrants, debriefings of informants, interviews of witnesses, reviews of recorded conversations involving drug trafficking activities, and analyses of telephone toll records and other records kept by or relating to drug traffickers.

4. I have assisted in several state and federal authorized intercepts of electronic communications using cellular telephone devices. I have received training in various investigative techniques and, through my training, education and experience, I have become familiar with the identification of illegal drugs, methods in which illegal drugs are imported, manufactured and distributed; the methods of payment for such drugs; and the methods used by drug traffickers to avoid law enforcement detection, including disguising the source and illegal nature of drug proceeds. I have attended schools and seminars that have specialized in all aspects of narcotics investigations. I continue to keep abreast of current trends and practices of drug traffickers by reading periodicals, intelligence briefs, and training literature. Additionally, I maintain contact with state, federal and local law enforcement personnel. I also utilize confidential sources, cooperating defendants, and sources of information to remain up to date with current trends of drug traffickers.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

6. The property to be searched is a silver IPhone utilizing cellular phone number 443-591-8265 and IMEI # 355792073942131, FCC ID; BCG-E2816A, Model A1549, hereinafter the "Device." The Device is currently located at the DEA Dover Post of Duty located at 1012 W. State College Road, Dover, Delaware.

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

8. On March 20, 2019, at approximately 1340 hours, Delaware State Police Troop 3 patrol was dispatched to          in Harrington, Delaware in reference to an overdose investigation. Upon arrival, it was determined that Victim 1 died of an apparent heroin overdose. Further investigation revealed that the heroin she ingested immediately prior to overdosing was stamped KD35. Raymond WOOD (W/M,     1985) was determined to be the source of supply for that heroin. At this time, toxicology reports are pending.

9. While on scene Troopers determined that Confidential Source 1 ("CS1") utilized his LG cell phone (IMEI: 358007085077132) to contact WOOD for the purpose of ordering up a quantity of crack cocaine and heroin for himself and Victim 1. CS1 consented for officers to search his phone. A review of CS1's cellular phone revealed outgoing calls from CS1's cellular phone to cellular phone number 443-591-8265 (the "8265" number) that was saved in CS1's phone as "Ray." After reviewing a DELJIS photograph of WOOD, CS1 was able to positively identify WOOD as "Ray," the individual who sold Victim 1 the heroin stamped KD35.

3

10. On March 20, 2019, members of the Delaware State Police ("DSP), Dover Police Department ("DPOD"), and the Drug Enforcement Agency ("DEA") conducted an undercover operation using CS1. At the direction and in the presence of law enforcement officers, CS1 contacted WOOD on the 8265 number and asked WOOD to purchase a quantity of heroin. WOOD agreed and instructed CS1 to meet him on the back roads in the Farmington/Greenwood, Delaware area. WOOD later called CS1 and said that he was out of heroin and had to procure more before he could provide CS1 with the requested heroin. Later that evening, WOOD and CS1 were in contact again over the phone. WOOD agreed to meet CS1 on Nine Foot Road in the Farmington area to conduct the deal.

11. Surveillance units responded to the area. CS1 indicated to officers that WOOD would be operating a blue GMC Yukon bearing Delaware registration PC10214. A CJIS inquiry revealed that Raymond Wood had several active capias' (warrants) and that he was actively on probation in the state of Delaware. All of the above listed information was relayed to surveillance units operating in the area of Greenwood, Farmington, and Harrington (Delaware).

12. At approximately 2201 hours, surveillance units in the area observed a blue GMC Yukon displaying Delaware registration PC10214 traveling westbound on Nine Foot Road from South DuPont Highway in or around Farmington, Delaware. Surveillance units followed the Yukon, which made a right turn onto Wheatfield Road and proceeded to travel Northbound. WOOD was determined to be the operator of the vehicle.

13. Shortly after being observed by surveillance units, WOOD began utilizing the 8265 number to contact CS1 to establish a meeting place for the transaction. WOOD's attempts to contact CS1 were done in the presence of TFO Krogh and Detective Schlimer. At this point Corporal Holl and Senior Probation Officer Willard of the DSP Kent County Governor's Task Force attempted to conduct a traffic stop on WOOD.

14. When Corporal Holl activated his emergency lights, WOOD refused to stop the Yukon. After a brief vehicle pursuit, WOOD slowed and eventually stopped the Yukon on the road. WOOD exited the Yukon and fled on foot into a wooded area.

15. Corporal Holl and Senior Probation Officer Willard announced themselves as law enforcement and ordered WOOD to stop but WOOD continued to flee from the officers on foot. Corporal Holl was eventually able to place WOOD under arrest after a physical altercation during which WOOD attempted to remove Corporal Holl's holstered firearm.

16. A search of the area where WOOD had been running and was taken into custody revealed a black hat and a black plastic bag, which contained suspected crack cocaine, suspected heroin stamped KD35, marijuana, methamphetamine, and a digital scale. In this same area a silver IPhone IMEI# 355792073942131, FCC ID; BCG-E2816A, Model: A1549 (cellular phone number 443-591-8265) was discovered. The screen saver on the IPhone was a picture of WOOD. Your Affiant believes the cell phone recovered from WOOD was the same phone WOOD utilized to conduct the transaction that resulted in Victim 1's overdose death and the follow-up transaction in which WOOD agreed to sell heroin to CS1.

17. A search of WOOD's vehicle revealed more suspected heroin with the stamp KD35. A search of WOOD's person resulted in the recovery of a single bag of heroin stamped KD35 and $471.00. Your Affiant issued WOOD *Miranda* warnings at DSP Troop 3 and asked if he wished to be interviewed in reference to Victim 1's overdose death. WOOD stated he knew nothing about an overdose death and did not wish to make any statements.

18. The Device is currently in the lawful possession of the DEA. It came into the DEA's possession in the following way: On March 20, 2019, the Device was seized as part of this drug investigation and was put into evidence at Delaware State Police Troop 3 (3759 S. State Street, Camden-Wyoming, Delaware 19934). On March 29, 2019, Your Affiant transported the Device from Delaware State Police Troop 3's evidence locker to the DEA Dover Post of Duty, where the Device was placed into evidence. Therefore, while the DEA might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

19. The Device is currently in storage at DEA Dover Post of Duty, located at 1012 W State College Road, in Dover, Delaware. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the DEA.

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

7

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

8

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "Wi-Fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal

9

  computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

10

21. Based on my training and experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

11

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Talansky Jean
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
On: May 17, 2019:

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

6.     The property to be searched is a silver IPhone smart phone with cellular phone number 443-591-8265 and IMEI # 355792073942131, FCC ID; BCG-E2816A, Model A1549, hereinafter the "Device." The Device is currently located at the DEA Dover Post of Duty located at 1012 W. State College Road, Dover, Delaware.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of Title 21 United States Code, Section 841(a)(1) & (b)(1)(C), and involve Raymond WOOD since March 20, 2019, including:

   a. any and all records related to a drug transaction that occurred on March 20, 2019 in the area of Farmington or Harrington, Delaware area;

   b. any and all records related to a drug transaction occurring in the area of Nine Foot Road in the Farmington, Delaware area;

   c. lists of customers and related identifying information;

   d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   f. any information recording WOOD's schedule or travel from March 20, 2019, to the present;

   g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.